# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

Ruben Nevarez,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-13-2286-PHX-DLR (JFM)

**Report & Recommendation
on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Tucson, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 7, 2013 (Doc. 1).  Respondents filed a *Limited* Response (Doc. 13) on April 1, 2014, a Supplement to the Record (Doc. 15) on April 17, 2014, and a Supplemental Response (Doc. 21) on October 2, 2014.  Petitioner filed a Reply on April 21, 2014 (Doc. 16) and a Supplemental Reply (Doc. 22) on October 23, 2014.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.


## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals described the factual background as follows:

Nevarez's convictions stem from two armed robberies committed on

1

> the same day. Nevarez was one of three suspects apprehended by the police shortly after the second robbery. The police brought the victims individually to where the suspects were in custody to determine whether they were the robbers. One of the victims, J. L., identified Nevarez as having participated in the robbery.

(Exhibit BB, Mem. Dec. at 2.)  (Exhibits to the Supplemental Response, Doc. 21, are referenced herein as "Exhibit ___." Exhibits to the Limited Response, Doc. 13, are referenced herein as Exhibit LR-___.")[1]


## B. PROCEEDINGS AT TRIAL

Petitioner was indicted in Maricopa County Superior Court on five counts of armed robbery, and five counts of aggravated assault.  (Exhibit X, Indictment.)

Counsel filed a request for a hearing to determine the suggestiveness of the pre-trial identification procedures (a "*Dessureault* hearing"),[2] which was held on November 6, 2009.  (Exhibit LR-O, Motion; Exhibit A, R.T. 11/6/09.)  "Although Nevarez's *Dessureault* motion focused on the out-of-court show-up identifications in general, the testimony at the hearing focused solely on J.L.'s identification of Nevarez."  (Exhibit BB, Mem. Dec. at 3, n. 1.)  The trial court found that the identification was not unduly suggestive.  (*Id.* at 3; Exhibit A, R.T., 11/6/096 at 28.)

> Trial proceeded, and during the direct ·examination of J. L., the prosecutor showed him three pictures: one of Nevarez and one of each of the other co-defendants. On cross examination, when J. L. was asked whether the prosecutor had spoken to him before his testimony about the pictures., J . L. answered affirmatively. J.L. testified that the prosecutor had asked whether he remembered the faces of the people who robbed him. J. L. was then asked "Did [the prosecutor] tell you that these were the people that robbed you?" to which J.L. responded, "[y]es." The prosecutor clarified there may have been an issue with the phrasing or interpretation of the question.

(Exhibit BB, Mem. Dec. at 4.)  Petitioner moved to strike the in-court identification, but

---

[1] The exhibits to the Limited Response (Doc. 13) were provided in an indeterminable order.  Most of the exhibits to that document and the Supplement to the Record (Doc. 15) have been replicated in the Supplemental Response (Doc. 21).  Accordingly, only limited reference is made to the record provided earlier.
[2] The name derives from the decision of the Arizona Supreme Court in *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), directing a pretrial hearing when the suggestiveness of identification procedures is challenged.

he trial court denied the motion.  (*Id.* at 5.)

Petitioner proceeded through the jury trial, and was convicted on four of the five counts of armed robbery, and two counts of aggravated assault.  (Exhibit BB, Mem. Dec. at 2.)  On February 26, 2010, Petitioner was sentenced to a combined total of 11 years in prison. (Exhibit LR-I, Sentence.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal, challenging the pre-trial identification procedure, the in-court identification, and the amount of pretrial incarceration credit.  (Exhibit Y, Opening Brief.)   The Arizona Court of Appeals modified the amount of pretrial incarceration credit, but otherwise affirmed his convictions and sentences. (Exhibit BB, Mem. Dec. at 13.)

Petitioner filed a Petition for Review with the Arizona Supreme Court (Exhibit CC).  The Arizona Supreme Court denied review on September 27, 2011.  (Exhibit BB, Mandate.)

## D.  PROCEEDINGS ON POST-CONVICTION RELIEF

On October 6, 2011, Petitioner filed a Notice of Post-Conviction Relief (Exhibit DD).   Counsel was appointed, but filed a "Notice of Completion" (Exhibit EE) evidencing an inability to find a claim for review, and seeking leave and extension for Petitioner to file a *pro per* petition.  On January 23, 2012, Petitioner filed a *pro per* Petition for Post-Conviction Relief (Exhibit FF), asserting claims of: (1) unconstitutional search and seizure; (2) unconstitutional use of perjured testimony; (3) improper sentence and sentencing procedures; (4) unduly prejudicial evidence; (5) false testimony to the grand jury; (6) failure of the victim to testify in violation of the Confrontation Clause; and (7) improper conviction of two offenses based on same conduct with a weapon.  In addition, Petitioner asserted claims of ineffective assistance of counsel based upon: (1) failure to adequately investigate; (2) failure to file a motion to suppress; and (3) failure to

permit Petitioner to testify at trial.

The PCR court found that the first seven claims were precluded under Arizona law because they "either were, or could have been previously litigated." (Exhibit II, M.E. 4/8/12 at 2.)[3]  The PCR court rejected the claims of ineffective assistance on their merits, and summarily dismissed them with the remainder of the Petition. (*Id.* at 2-3.)

Petitioner filed a Petition for Review (Exhibit LL), rearguing his claims of ineffective assistance of trial counsel, and asserting that his claims were improperly precluded because he had asserted them as instances of ineffective assistance of appellate and PCR counsel.  The Arizona Court of Appeals summarily denied review. (Exhibit NN, Order 10/3/13.)

Petitioner did not seek further review. (Petition, Doc. 1 at 5.)


**E.  PRESENT FEDERAL HABEAS PROCEEDINGS**

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on November 7, 2013 (Doc. 1). Petitioner's Petition asserts the following eight grounds for relief, based on his Fifth, Sixth, and Fourteenth Amendment rights::

> (1) The "one-on-one" identification, apparently of Petitioner by a victim, was "inherently suggestive," and the state failed to meet its burden that the identification was reliable;
> (2) Prosecutorial misconduct resulted in a victim's in-court identification of Petitioner, and the trial court abused its discretion in denying a defense motion to strike the identification;
> (3) Evidence from an unconstitutional search and seizure of Petitioner's vehicle was introduced at trial;
> (4) Petitioner's trial counsel was ineffective by failing to conduct a pre-trial investigation and appellate counsel was ineffective for failing "to litigate claims that would better help Petitioner on appellate level";
> (5) Petitioner's indictment was based on "false and misleading testimony" by an officer;
> (6) "Unduly prejudicial evidence was admitted in violation of Evidence Rule 403";
> (7) Petitioner was improperly convicted of armed robbery and aggravated assault "based on the same conduct with a weapon";
> (8) Petitioner's rights under the Confrontation Clause were violated

---

[3] The same minute entry is attached to the Answer as part of Exhibit DD.

1      when a victim failed to show up in court to testify and to be cross
       examined by the defense attorney.

2      (Order 1/2/14, Doc. 4 at 2.)

3          **Response** - On April 1, 2014, Respondents filed their Response ("Answer") (Doc.

4      13).   Respondents argue that Petitioner has procedurally defaulted his state remedies on

5      the claims in:  (1) Grounds 2(a) (prosecutorial misconduct re in-court identification) (*id.*

6      at 15-16); (2) Ground 4(b) (ineffective assistance of appellate counsel re failure to

7      litigate claims) (*id.* at 16-17); (3) Ground 3 (unconstitutional search and seizure); (4)

8      Ground 5 (false testimony at grand jury); (5) Ground Six (unduly prejudicial evidence);

9      (6) Ground 7 (dual convictions on same weapons conduct); (7) Ground 8 (Confrontation

10     Clause) (*id.* at 17-19).  Respondents further argue that the following grounds are without

11     merit: (1) Ground 1 (pretrial identification) (*id.* at 22-31); (2) Ground 2(b) (in-court

12     identification) (*id.* at 31-36); (3) Ground 4(a) (ineffective assistance of trial counsel) (*id.*

13     at 36-40).

14         **Supplement to Record** – In an Order filed April 3, 2014 (Doc. 14), the Court

15     directed Respondents to supplement the record with briefs in the appellate and PCR

16     proceeding.   On April 17, 2014, Respondents complied, and submitted Exhibts SE-A

17     through SE-D (Doc. 15).

18         **Reply** - On April 21, 2014, Petitioner filed a Reply (Doc. 16).  Petitioner argues:

19     (1) that the allegations of the petition should be taken as true for purposes of summary

20     dismissal (*id.* at 2-3); (2) he fairly presented on direct appeal his claims concerning the

21     pretrial identification (Ground One) and the in-court identification (Ground Two) (*id.* at

22     4-6); (3) he failed to presented his claims in his PCR proceeding (*id.* at 6-7); (4) the

23     ineffective assistance of PCR counsel is cause to excuse his procedural defaults, citing

24     *Martinez v. Ryan*, 566 U.S. - - - (2012) (Reply, Doc, 16 at 7); and (5) his claim in

25     Ground 5 (unduly prejudicial evidence) affects "a number of due process and other

26     federal constitutional rules" (*id.* at 7-8).

27         **Supplemental Answer** – On August 12, 2014, the Court advised the parties that a

28     tentative conclusion had been reached that Petitioner's claims in Grounds 3, 5, 6, 7, and

8 were not procedurally barred as argued by Respondents, and directed a supplemental response on the merits of those claims.  (Order, Doc. 18.)

On October 2, 2014, Respondents filed their Supplemental Response (Doc. 21). Respondents argue that: (1) the claim in Ground Three was waived at trial, is non-cognizable, and is without merit (*id.* at 6-10); (2) the claim in Ground Five is without merit (*id.* at 10-13); (3) the claim in Ground Six is too vague to be of merit and asserts only a state law violation (*id.* at 13-14); (4) the claim in Ground Seven is without merit (*id.* at 14-16); and (5) the claim in Ground Eight is too vague, and without merit (*id.* at 16-17).

**Supplemental Reply** – On October 23, 2014, Petitioner filed his Supplemental Reply ("Response to Supplemental Response") (Doc. 22).  Petitioner "acquiesce[s] to grounds 3-8 for the purpose" of his Supplemental Reply, and instead addresses Grounds "1, 2, and 2A."  (*Id.* at 1.)    Although the Court only granted Petitioner leave to reply to the supplemental response (Order 8/12/14, Doc. 18 at 2) and this Supplemental Reply does not address any of the arguments in the Supplemental Response, because it does not affect the outcome, the Court will nonetheless consider the Supplemental Reply.

### III. APPLICATION OF LAW TO FACTS

### A.  EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner's state remedies on a number of his claims are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted. *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on

the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice. *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 13 at 12-13.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no

provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).    Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments).  For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.  Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after

8

the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable to his claims.  Nor does it appears that such exceptions would apply.  The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> > (1) The newly discovered material facts were discovered after the trial.
> > (2) The defendant exercised due diligence in securing the newly discovered material facts.
> > (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no

application.  Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court.  Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

## 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin*, - - - U.S. - - -, 131 S.Ct. 1120, 1127 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

/ /

/ /

**4. Application to Petitioner's Claims**

Respondents argue that Petitioner has procedurally defaulted his state remedies or been procedurally barred on an independent and adequate state ground, on the claims in Grounds 2(a), 4(b), 3, 5, 6, 7, and 8.  (Answer, Doc. 13 at 15-19.)

**a.  Ground 2(a) - Prosecutorial Misconduct re In-Court Identification**  - In Ground Two of his Petition, Petitioner argues that: (a) prosecutorial misconduct resulted in a victim's in-court identification of Petitioner, and (b) the trial court abused its discretion in denying a defense motion to strike the identification.   Petitioner alleges that the misconduct was the prosecution showing the victim photographs of Petitioner and his co-defendants just prior to trial.  (Petition, Doc. 1 at 7.)

Respondents argue that the first part of this claim, pertaining to the prosecutorial misconduct, is procedurally defaulted.  Respondents argue that the remainder of the claim was presented on direct appeal, but the claim of prosecutorial misconduct was not raised on direct appeal or in his post-conviction relief proceedings.  (Answer, Doc. 13 at 15-16.)

Petitioner argues that he fairly presented on direct appeal his claims concerning the in-court identification (Petition, Doc. 1 at 7; Reply, Doc. 16 at 4-6) and that he fairly presented his claims in his PCR proceeding (*id.* at 6-7).

Indeed, on direct appeal, Petitioner did argue that showing the photo-lineup with just photos of the defendants was unduly suggestive and that the in-court identification should have been excluded. (Exhibit Y, Opening Brief at 14-24.)  However, Petitioner never asserted that the photo-lineup was prosecutorial misconduct.  (*Id.*)

In his PCR petition, Petitioner did not challenge the in-court identification at all. (Exhibit FF, PCR Pet.)  In his Petition for Review in the PCR proceeding, Petitioner did recount the arguments asserted on direct appeal concerning the in-court identification (Exhibit LL at 4), but he did not assert any argument of prosecutorial misconduct based on the photographic line-up (*id.*, generally).

Accordingly, the undersigned concludes that Petitioner never fairly presented his

11

1   Ground 2(a), asserting a claim of prosecutorial misconduct, to the Arizona Court of

2   Appeals.   For the reasons discussed hereinabove, the undersigned concludes that

3   Petitioner's state remedies on this claim are now procedurally defaulted.

4

5       **b.  Ground 4(b) - Ineffective Assistance of Appellate Counsel** –

6       In Ground 4 of his Petition, Petitioner argues that (a) trial counsel was ineffective

7   by failing to conduct a pre-trial investigation, and (b) appellate counsel was ineffective

8   for failing "to litigate claims that would better help Petitioner on appellate level."

9   (Petition, Doc. 1 at 9.)

10      Respondents argue that Petitioner never presented part (b) of this claim,

11  concerning the ineffective assistance of appellate counsel, to the PCR court.   Thus,

12  Respondents argue, it was not properly presented at all levels, and it is procedurally

13  defaulted.  (Answer, Doc. 13 at 16-17.)

14      Petitioner argues he presented this (and his other claims) in his PCR proceeding.

15  (Reply, Doc. 16 at 6-7; Petition, Doc. 1 at 9.)[4]

16      In his PCR proceeding, Petitioner argued to the Arizona Court of Appeals that

17  appellate counsel was ineffective in failing to raise the claims which the PCR court had

18  rejected as waived by failure to raise them below.   (Exhibit LL, Pet. Rev. at 8.)

19  Petitioner specifically argued that he had raised this argument at page 2 of his PCR

20  petition.  (*Id.*)

21      The referenced page is unclear.  Petitioner's PCR Petition consisted of four pages

22  of a form petition, two pages of "Exhibit #1," four pages of "Attachment A," and a

23  certificate of service.  On the second page of the form petition, Petitioner had marked the

24  box to assert a claim of "[t]he denial of the constitutional right to representation by a

25  competent lawyer at every critical stage of the proceeding." However, no facts were

26  alleged to clarify that this pertained to appellate counsel, nor what failings of appellate

27

28  _____
    [4]  Such a claim could not have been presented on direct appeal, any prejudice having not
    accrued until culmination of that proceeding.

counsel might amount to deficient performance.   Such a naked, generic reference to ineffective assistance would not be a fair presentation of the facts underlying a claim of ineffectiveness of appellate counsel, nor any counsel. *See Baldwin v. Reese*, 541 U.S> 27, 33 (2004) (fair presentation of ineffectiveness of trial counsel claim did not carryover to fair presentation of claim regarding appellate counsel); and *Wood v. Ryan*, 693 F.3d 1104, 1120 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 239, 187 L. Ed. 2d 177 (2013) ("a general allegation of ineffective assistance of counsel is not sufficient to alert a state court to separate specific instances of ineffective assistance").

The second page of "Exhibit #1" makes no reference to ineffective assistance, or appellate counsel.

The second page of "Attachment A" plainly deals with a claim that "Petitioner's counsel was ineffective," but refers only to a failure of counsel to investigate the license plate of the vehicle he was driving when he was apprehended.   Those references to investigative work, uniquely in the province of trial counsel, is not fair presentation of any claim against appellate counsel.

Thus, it appears that Petitioner first presented his claims of ineffective assistance of appellate counsel to the Arizona Court of Appeals, without first presenting them to the PCR Court.

To fairly exhaust his state remedies, a Petitioner must fairly present at every level. Presentation to the Arizona Court of Appeals for the first time is not sufficient to exhaust an Arizona state prisoner's remedies.    "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).  In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review."  *Id.* at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire

direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id*. (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).

In Arizona, review of a petition for post-conviction relief by the Arizona Court of Appeals is governed by Rule 32.9, Arizona Rules of Criminal Procedure, which clarifies that review is available for "issues which were decided by the trial court." Ariz. R. Crim. P. 32.9(c)(1)(ii). *See also State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924, 928 (Ariz.App., 1980) (issues first presented in petition for review and not presented to trial court not subject to review).

Accordingly, the undersigned concludes that Petitioner never fairly presented his Ground 4(b), asserting a claim of ineffective assistance of appellate counsel, to the Arizona Court of Appeals. For the reasons discussed hereinabove, the undersigned concludes that Petitioner's state remedies on this claim are now procedurally defaulted.

### c. Ground 3, 5, 6, 7 and 8

Respondents argue that Petitioner's Grounds 3 (search and seizure), 5 (false testimony), 6 (unduly prejudicial evidence), 7 (double jeopardy) and 8 (confrontation clause) were presented in his state Petition for Post-Conviction Relief, but the PCR court applied an independent and adequate state ground when it found the claims precluded.[5] (Answer, Doc. 13 at 17.)

Petitioner also raised these arguments in his Petition for Review, in parts (C)(1) (Ground 3), (C)(2) (Ground 5), C(3) (Ground 7), C(4) (Ground 6), and C(5) (Ground 8). (Exhibit LL, PFR at 9.) The Arizona Court of Appeals summarily denied review. (Exhibit NN, Order 10/3/13.) To determine whether a state procedural ruling bars federal review, the habeas court must look to the "last reasoned opinion on the claim."

---

[5] Because Respondents do not dispute that the claims raised in Grounds 3, 5, 6, 7, and 8 of this Petition were fairly presented to the PCR court and in the Petition for Review thereof,, the undersigned presumes, for purposes of this Report and Recommendation that they were fairly presented.

1   *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).   Thus, a summary denial following a

2   reasoned decision is presumed to be based on the same grounds as the reasoned decision,

3   and the habeas court should "look through" the summary denial to the rationale given in

4   the reasoned decision.  *Id.*

5        Here, in rejecting Petitioner's "precluded claims", the PCR court opined that

6   (other than his claims of ineffective assistance) Petitioner's claims "either were, or could

7   have been previously litigated."  (Exhibit II, M.E. 4/18/12.)

8        A finding of preclusion, *i.e.* that the claims have been raised before, "does not

9   provide a basis for federal courts to apply a procedural bar."   *Ceja v. Stewar*t, 97 F.3d

10  1246, 1253 (9th Cir. 1996).[6]  Where an Arizona Court asserts both conditions apply to a

11  group of claims without delineating which applied to which, it "did not clearly base its

12  decision on independent and adequate state law grounds."  *Id.  See also Calderon v. U.S.*

13  *Dist. Court for Eastern Dist. of California (Bean)*, 96 F.3d 1126, 1131 (9th Cir. (Cal.)

14  1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to

15  specify which claims were barred for which reasons, the Nevada Supreme Court 'did not

16  clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner*

17  *v. Grigas*, 328 F.3d 1039, 1053 (9th Cir.  (Nev.) 2003).  To avoid habeas review, a state

18  court decision must "clearly and expressly rely on an independent and adequate state

19  ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

20       Moreover, where a state court, even erroneously, rejects a claim on the basis that

21  it has been previously presented, then federal habeas review is not precluded.  *Cone v.*

22  *Bell*, 556 U.S. 449, 468-469 (2009).  ""When a state court declines to review the merits

23  of a petitioner's claim on the ground that it has done so already, it creates no bar to

24  federal habeas review." *Wellons v. Hall*, 558 U.S. 220, 222 (2010) (*per curiam*).

25

26       [6] The Arizona courts reference both its waiver bar (e.g. that the claims were not
    raised earlier, when they could have been) and its preclusion bar (*i.e.* that the claims
27  actually were raised earlier and adjudicated on the merits) as resulting in the claims
    being "precluded".  This likely results from the pronouncement in Arizona Rule of
28  Criminal Procedure 32.2(a) that with both types, the "defendant shall be precluded from
    relief under this rule."

15

Here, the PCR court did not clarify which claims it deemed "were" previously litigated, and those which only "could have been." Thus, Petitioner's state remedies on the claims in Grounds 3, 5, 6, 7 and 8 must be deemed properly exhausted.

**e. Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner properly exhausted his remedies as to the following grounds on which Respondents assert no failure to exhaust: (1) Ground 1 (pretrial identification); (2) Ground 2(b) (in-court identification); (3) Ground 4(a) (ineffective assistance of trial counsel). The undersigned further concludes that Petitioner properly exhausted his remedies as to the following grounds on which the PCR court ruled the claims had been litigated: (4) Ground 3 (search and seizure); (5) Ground 5 (false testimony), (6) Ground 6 (unduly prejudicial evidence); (7) Ground 7 (double jeopardy); and (8) Ground 8 (confrontation clause).

Finally, based on the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on: (1) Grounds 2(a) (prosecutorial misconduct re in-court identification); and (2) Ground 4(b) (ineffective assistance of appellate counsel re failure to litigate claims).

## 4. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause

should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Here, Petitioner asserts that the ineffective assistance of his PCR counsel constitutes cause to excuse the presentation of his procedurally defaulted claims, citing *Martinez v. Ryan*, 566 U.S. ___ (2012).  (Reply, Doc. 16 at 7.)

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state courts and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, ordinarily, to meet the "cause" requirement, the ineffective assistance of counsel must amount to an independent constitutional violation. *Id*. Accordingly, where no constitutional right to an attorney exists (e.g. in a PCR proceeding), ineffective assistance will not amount to cause excusing the state procedural default.  *Id*.

The Courts have long rejected claims of ineffective assistance of PCR counsel. "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."  *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).  The *Coleman* Court thus held that the ineffectiveness of PCR counsel also could not establish cause to excuse a failure to properly exhaust state remedies and procedural default on a claim.

However, the Supreme Court has recently recognized two exceptions to the *Coleman* rule, in *Maples* and *Martinez*.

In *Maples v. Thomas*, 132 S.Ct. 912 (2012), the Supreme Court held that cause could be shown when post-conviction counsel was not merely negligent (and under the law of agency, that negligence being chargeable to the petitioner) but had abandoned the representation without notice to the petitioner, resulting in the loss of his state remedies.

Here, PCR counsel did not abandon Petitioner, but fulfilled his obligations in the face of his inability to find an issue for review.

In *Martinez*, the Court recognized that because courts increasingly reserve review of claims of ineffective assistance of trial counsel to post-conviction relief proceedings, the ineffectiveness of counsel in such PCR proceedings could effectively defeat any review of trial counsel's ineffectiveness.  Accordingly, the Court recognized a narrow exception to *Coleman's* ruling on the ineffectiveness of PCR counsel as cause to excuse a procedural default on such a claim.

In *Nguyen v. Curry*, the Ninth Circuit held that *Martinez* applied equally to unpresented claims of ineffective assistance of appellate counsel.  736 F.3d 1287 (2013).

The procedurally defaulted Ground 2(a) does not assert a claim of ineffective assistance, but instead asserts a claim of prosecutorial misconduct regarding the in-court identification.  Accordingly, the *Martinez* exception would not apply to this claim.

The procedurally defaulted Ground 4(b) asserts a claim of ineffective assistance of appellate counsel.  Therefore this claim comes within the ambit of the *Martinez* exception.

For Petitioner to rely upon Martinez, Petitioner must "demonstrate[e] two things: (1) 'counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),' and (2) 'the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit.'"  *Cook v. Ryan*, 688 F.3d 598, 607 (9th Cir. 2012) (quoting *Martinez*, 132 S.Ct. at 1318).

Here, Petitioner simply asserts that "appellate counsel failed to litigate claims that would better help Petitioner on appellate level." (Petition, Doc. 1 at 9.)  Despite the fact that Respondents argued that this claim was conclusory (Answer, Doc. 13 at 39), Petitioner's Reply simply relates that he asserted a claim of ineffective assistance to the Arizona Court of Appeals, admits his PCR petition was deficient, and argues that PCR

18

1   counsel was ineffective.  (Reply, Doc. 16 at 7.)  In his Supplemental Reply (Doc. 22),

2   Petitioner simply addresses the merits of other claims without making any reference to

3   appellate counsel's performance.  In sum, Petitioner has not identified any particular

4   claims that appellate counsel was deficient for failing to raise.

5          It is true that in his PCR proceeding, Petitioner argued to the Arizona Court of

6   Appeals that appellate counsel was ineffective in failing to raise the claims which the

7   PCR court had rejected as waived by failure to raise them below.  (Exhibit CC, Pet. Rev.

8   at 8.)  However, Petitioner makes no reference to this brief in Ground 4 of the Petition

9   (Doc. 1 at 9), and only a passing observation in his Reply that such a claim had been

10  raised, but without any indication that he now asserts the same claim (Doc. 16 at 7).

11  While reviewing the claims presented in the state court is necessary to resolving the

12  exhaustion status of claims, Petitioner's state court briefs are not read into his habeas

13  petition. *Cf. Dye v. Hofbauer*, 546 U.S. 1, 4 (2005) (finding claim adequately presented

14  where "petition made clear and repeated references to an appended supporting brief").

15  Nor does this Court's obligation to construe Petitioner's *pro se* briefs liberally permit

16  this Court to "supply essential elements of the claim that were not initially pled."  *Ivey v.*

17  *Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

18         As stated in the Petition, this claim is so vague that it would not qualify as having

19  "some merit."  "A convicted defendant making a claim of ineffective assistance must

20  identify the acts or omissions of counsel that are alleged not to have been the result of

21  reasonable professional judgment."  *Strickland*, 466 U.S. at 690. Without identifying the

22  specific claims that Petitioner contends should have been raised on direct appeal,

23  Petitioner leaves this Court with nothing more than conclusory allegations. Conclusory

24  allegations of ineffective assistance are insufficient to maintain such a claim.  *Jones v.*

25  *Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

26         Moreover, for the same reason, any effort by PCR counsel to assert the claim now

27  asserted by Petitioner would have been futile.  "The failure to raise a meritless legal

28  argument does not constitute ineffective assistance of counsel."  *Baumann v. United*

19

*States*, 692 F.2d 565, 572 (9th Cir. 1982).  Failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996).

Even if this Court were to read Petitioner's state Petition for Review version of an ineffective assistance of appellate counsel claim into Ground 4(b), the claim would be without merit.  As discussed above, the undersigned has deemed the claims treated as waived to have been properly exhausted and addresses them hereinafter.  The undersigned concludes that each of those claims is without merit.

It is true that the undersigned's conclusion that Ground 5 is without merit is based upon the absence of a federal right to a grand jury indictment in state proceedings.  To the extent that Petitioner references Arizona state law for the source of a right to a grand jury indictment, the analysis on Ground 5 would not foreclose a claim based upon counsel's failure to assert a state law claim based on the use of perjured testimony at the grand jury.  Indeed, although Arizona permits only limited challenges to grand jury proceedings, it does recognize the right to challenge a grand jury proceeding based upon the use of false or misleading testimony in that proceeding.  *See Nelson v. Royston*, 137 Ariz. 272, 669 P.2d 1249 (1983).  However, like the federal courts (as discussed hereinafter in connection with Ground 5) Arizona holds that "[a]n error—even one with the potential to affect a grand jury's charging decision—is rendered harmless by the trial jury's subsequent guilty verdict." *State v. Atwood*, 171 Ariz. 576, 601, 832 P.2d 593, 618 (1992), *disapproved of other grounds by State v. Nordstrom*, 200 Ariz. 229, 25 P.3d 717 (2001) (citing *United States v. Mechanik*, 475 U.S. 66, 73 (1986)).  Accordingly, any challenge to the grand jury brought by appellate counsel on state law grounds would have been without merit. Indeed, in *Atwood*, the Arizona Supreme Court found that prejudice from trial counsel's ineffectiveness in failing to challenge grand jury proceedings could not be shown given the defendant's conviction at trial. Therefore, even a state law version of the claim in Ground 5 would have been without merit.

With regard to Ground 7, the undersigned concludes hereinafter that Petitioner has failed to make out a federal claim of a double jeopardy violation under *Blockburger*

*v. United States*, 284 U.S. 299, 304 (1932).  To the extent that Petitioner intended a claim founded upon Arizona law as well as federal law, Arizona also has a state double jeopardy protection upon which appellate counsel could have relied.  *See* Ariz. Const. Art. II, § 10.   However, '[t]he state and federal double jeopardy clauses generally provide the same protection to criminal defendants." *State v. Siddle*, 202 Ariz. 512, 515, 47 P.3d 1150, 1153 (App. 2002).  In particular, Arizona applies the federal *Blockberger* test for determining whether multiple offenses are distinct for double jeopardy clauses. *Id.* at 516, 47 P.3d at 1154. *But see State v. Ortega*, 220 Ariz. 320, 324-325, 206 P.3d 769, 773-774 (App. 2008) (declining to apply  in a double jeopardy context a "same conduct" standard applied by *In re Jerry C.,* 214 Ariz. 270, 151 P.3d 553 (App.2007) in the context of deciding whether an indictment provided adequate notice).  Accordingly, any state law claim would have also been without merit.

Accordingly, Petitioner has failed to meet the *Martinez* standard, and the failure to properly exhaust his state remedies on his Ground 4(b) cannot be excused.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

## 5.  Actual Innocence as Cause

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id*. at 329. This standard is referred to as the "*Schlup* gateway." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Petitioner fails to proffer anything to show that no reasonable juror would have found him guilty. Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

**6. Summary re Exhaustion**

Based on the foregoing, the undersigned concludes that Petitioner's Grounds 2(a) (prosecutorial misconduct re in-court identification) and Ground 4(b) (ineffective assistance of appellate counsel) must be dismissed with prejudice.

**B. STANDARDS APPLICABLE TO MERITS REVIEW**

While the purpose of a federal habeas proceeding is to search for violations of federal law, not every error justifies relief.

**Errors of Law** – Ordinarily, in a habeas petition challenging a state criminal conviction, "a federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal courts by presenting new evidence.   There is a well-established presumption of correctness of state court findings of fact.  This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision.  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court."  Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the

merits).  Here, Petitioner's Grounds 3 through 8 were not addressed on their merits, but were disposed of in his PCR proceeding on the basis that they were precluded. Accordingly, this Court must evaluate those claims *de novo*.

## C.  GROUND 1: PRETRIAL IDENTIFICATION

In his Ground 1, Petitioner asserts that the pretrial identification procedure was inherently suggestive and that the state failed to meets its burden of proving its reliability.  (Petition, Doc. 1 at 6.)  Respondents argue that the state court's rejection of this claims was not contrary to nor an unreasonable application of Supreme Court law. (Answer, Doc. 13 at 22-31.)

The Arizona Court of Appeals addressed this claim on Petitioner's direct appeal. The state court concluded that the one-on-one identification procedure utilized was inherently suggestive, but applied the standards under *Neil v. Biggers*, 409 U.S. 188 (1972) to conclude that he identification was nonetheless reliable.  (Exhibit BB, Mem. Dec. 3/29/11 at 5-9.)

In his Petition, Petitioner points to no specific deficiency in the state court's determination of the facts or the law.  His Reply simply summarily restates the claim. (Reply, Doc. 16 at 4.)  In his Supplemental Reply, Petitioner does not address the merits of Ground 1.[7]

**Applicable Law** – Due process precludes the introduction of a pre-indictment identification if the identification procedure was unnecessarily suggestive, unless the indicators of the witness's reliability outweigh the corrupting effect of the suggestiveness.  *Perry v. New Hampshire*, 181 S. Ct. 716, 724 (2012).  The purpose of this principle is to "to deter police from rigging identification procedures, for example, at a lineup, showup, or photograph array."  *Id.* at 721.

The premise of such an analysis is the determination of whether the identification

---

[7] In his Supplemental Reply, Petitioner does reference "Ground 1" (Doc. 22 at 2), but then proceeds to discuss the claim in Ground 2 concerning the in-court identification, and the discourse between the prosecution and the victim prior thereto.

procedure utilized was "unnecessarily suggestive." *Simmons v. United* States, 390 U.S. 377, 384-385 (1968)(determining whether a photo lineup was "necessary" and whether it was "suggestive").  If it was not, the inquiry necessarily ends.

If the procedure was unnecessarily suggestive, the central question is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199.  "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time  between the crime and the confrontation." *Id.*  at 199-200.

**Application to State Decision** - Here, the Arizona Court of Appeals evaluated whether the identification procedure was suggestive, and concluded it was.  In doing so, the State Court applied a state presumption that " 'Single person identifications are inherently suggestive.'" (Exhibit BB, Mem. Dec. at 6 (quoting *State v.* Canez, 202 Ariz. 133, 150, 42 P.3d 564, 581 (2002)).  Arguably, if that was all that was required, the state court deviated from federal law by not requiring Petitioner to also show that the procedure was unnecessarily suggestive.   Such a deviation would, however, have benefitted Petitioner, and thus was harmless.   Harmless error provides no basis for habeas relief. *See Bains v. Cambra*, 204 F.3d 964  (9th Cir. 2000).

Moreover, the state court went on to evaluate the circumstances mitigating the suggestiveness of the identification procedure, including that the witness was asked to view three suspects, not just one person, and an advisement from the officer to the witness that the person being viewed might not be involved in any crime.  (Exhibit BB, Mem.Dec. at 7.)

The state court then evaluated the *Biggers* criteria, including the witness's opportunity to view Petitioner (*id.* at 7), the degree of attention paid by the witness (*id.* at 7-8), the lack of a prior description (*id.* at 8), and the certainty of the identification and

25

1  limited intervening time (*id.*).

2          The state court then considered the totality of the circumstances and concluded

3  that the identification was sufficiently reliable to have been admissible.  (*Id.* at 8-9.)

4          Petitioner does not point to any specific impropriety in the state court's decision.

5  The undersigned discerns none. Thus, the undersigned concludes that the factual and

6  legal determinations by the state court were correct and Ground 1 is without merit.

7

8  **D.  GROUND 2(b): IN-COURT IDENTIFICATION**

9          In his Ground 2(b), Petitioner argues that the in-court identification was tainted

10  by the prosecutor showing a photograph of Petitioner and co-defendants to the victim,

11  and telling him Petitioner was the person that robbed him, and his due process rights

12  were violated as a result.  (Petition, Doc. 1 at 7.)

13          On cross-examination, the victim J.L. testified:

14                  Q. At some point before you took the witness stand to testify
              today, [the prosecutor] had showed you these three  photographs,
15          right, Exhibits 192, 193, and 194?
                  A. Yes.
16                  Q. Did he ask you any questions about them at the time?
                  A. Yes.
17                  Q. What questions did he ask you?
                  A. He asked about the defendants.
18                  Q. And what did he ask you about the defendants?
                  A. If I remember the faces of the people that robbed us.
19                  Q. Okay. Did he tell you that these were the people that
          robbed you?
20                  A. Yes.

21  (Exhibit G, R.T. 1/12/10 PM at 63.)  On re-direct, the victim testified:

22                  Q.  Now, prior to trial, defense counsel -- or I guess, in cross-
              examination, defense counsel asked you if I had ever taken pictures
23          to you and told you that those individuals were the ones who robbed
          you.
24                      Do you remember that question?
                  A. To my house, no, you didn't.
25                  Q. No. No.
                  A. Here.
26                  Q. Right here.
                  A. Just when you asked me if I knew them, and if they were
27          the guilty parties.
                  Q. Did I ever tell you that they're guilty?
28                  A. No.

Q. Did you look at some pictures and then tell me what you saw?

A. Yes.

Q. And your testimony here that this defendant - -

A. In the picture. He was in one picture.

Q. So your statements here, though, today, forgetting about any other identification, do you recognize him as he sits here today?

A. Yes.

Q. And has anybody ever told you that this is the guy who robbed you?

A. If somebody told me? No. I just saw when he robbed me. I just saw when he did it.

Q. So you remember him robbing you from back at the time that he robbed you?

A. Yes.

(Exhibit H, RT 1/14/10 AM at 15-16.)

At trial, defense counsel made a motion to strike the in-court identification based upon the pre-trial display of the Petitioner's picture.  (Exhibit H, R.T. 1/14/10 AM at 6.) Trial counsel acknowledged the inability to resolve the factual dispute over the conversation between the victim and the prosecutor, and repeatedly disavowed relying upon the prosecutor's purported identification of the defendant to the victim.  (*Id.* at 6-7, 11.)

Nonetheless, in response, the prosecutor addressed the conversation between him and the victim.

The only way that we got to this other issue of me preparing the witness prior to trial was when the defense brought it up on cross, and they're allowed to. In trial preparation, they can ask, what did I ask you, or what did I ask the victim, or what did I tell the victim?

I believe there was a couple questions that were inappropriate because I didn't think it was a good faith basis for asking them, and the answer came out, I think, misconstrued because the interpreter's -- it wasn't the interpreter who did it. It was just the way the victim understood the interpretation came across as being different than what it was.

That aside --

THE COURT: Wait. Are you saying that the interpreter -- there's something wrong with the interpretation, or are you saying --

MR. VOYLES: Actually--

THE COURT: I understand you speak Spanish; is that right?

MR. VOYLES: Right, and no, I have no beef with what the interpretation was with regard to identification. The way that it was understood by the victim and the way that I heard it and that I believe I would of understood it, I would of understood it the way that it was answered, but that's irrelevant. That's a whole other issue.

That was with regard to when defense counsel asked, did Mr. Voyles tell you that these individuals were the ones who robbed

27

1
2

> you, and the way it was asked, it sounded like Mr. Gadow had a good faith basis to believe I had actually gone out there and said, here, these are the three people that robbed you, right? That never happened, but that's the way it came across.

3   (Exhibit H, R.T 1/14/10 AM at 8-9.)

4        Petitioner asserted his argument in Ground 2(b) on direct appeal.  (Exhibit Y,

5   Opening Brief at 20.)  The Arizona Court of Appeals addressed Petitioner's challenged

6   to the viewing of the photograph, but described the argument as asserting that "because

7   the prosecutor showed [the victim] a photo of Nevarez and the two co-defendants prior

8   to his testimony, [the victim's] in-court identification was tainted." (Exhibit BB, Mem.

9   Dec. at 9.)    In summarizing the facts, the Arizona Court of Appeals discussed the

10  victim's testimony that the prosecutor had told him the people in the photographs were

11  the robbers, and quoted the redirect examination by the prosecution on the point.  (*Id.* at

12  4-5.)  In its discussion of the claim the Arizona Court of Appeals summarized the facts

13  and concluded that "[o]n redirect, the prosecutor clarified with [the victim] what took

14  place prior to his testimony."  (*Id.* at 9.)  The state court concluded that under the totality

15  of the circumstances, the in-court identification was reliable based upon the victim's

16  testimony and his pretrial identification of Petitioner.  (*Id.* at 11-12.)

17       Respondents argue that the claim is controlled by *Biggers* and, based upon the

18  application of the *Biggers* factors, the state court's rejection of this claim was not

19  contrary to nor an unreasonable application of federal law.  Respondents further argue

20  that any error was harmless given the other evidence against Petitioner, including

21  testimony by an accomplice identifying Petitioner as a participant, Petitioner's

22  possession of the victim's wallet and identification at the time of his arrest, and the

23  victim's pretrial identification of Petitioner.  (Answer, Doc. 13 at 31-36.)

24       In his Reply, Petitioner argues that the prejudicial effect of an unreliable

25  identification procedure is a mixed question of law and fact subject to *de novo* review.

26  (Doc. 16 at 5-6.) In his supplemental Reply, Petitioner argues that the prosecutor's

27  comments to the victim were prejudicial, and that the explanation asserted by the

28  prosecutor of a misunderstanding based on the victim's primary language being Spanish

1  was not credible given the victim's testimony that he understood English perfectly and

2  did not require a translator.  (Doc. 22 at 2-3.)

3      Petitioner points to nothing in the Arizona court's decision that was contrary to or

4  an unreasonable determination of federal law.  Rather, Petitioner simply argues that the

5  ultimate determination should have been different.

6      **<u>Suggestiveness of Photo Display</u>** - Petitioner properly contends that a state court

7  evaluation of identification procedures is a mixed question of law and fact, and that the

8  presumption of correctness under 28 U.S.C. § 2254(d) only applies to the factual

9  determinations, and "the federal court may give different weight to the facts as found by

10  the state court and may reach a different conclusion in light of the legal standard."

11  *Sumner v. Mata*, 455 U.S. 591, 597 (1982).

12      However, the only factual discrepancy referenced by Petitioner is the failure of

13  the Court to evaluate the assertion of the lack of a language barrier.

14      Petitioner fails to establish the absence of a language barrier, let alone to establish

15  that the victim "understood English perfectly and [ ] in no way did he need a translator."

16  (Supp. Reply, Doc. 22 at 3.)[8]

17      On cross-examination, the victim testified as follows:

18          Q. And Mr. [JL], I can't help but notice that occasionally
            when the prosecutor or I would ask you a question, you seem to
19          understand it a little bit in English.
                    Do you speak a little English?
20          A. Very little.
            Q. You're obviously more comfortable with the assistance of
21      an interpreter, right?
            A. Yes.
22

23  (Exhibit G, R.T. 1/12/10 PM at 62.)

24      Nonetheless, the conversation between the prosecutor and the victim would have

25  affected the suggestiveness of the procedure, which the Arizona Court of Appeals did not

26  dispute.

27  [8] Another victim, DF, testified through an interpreter, that he understood a "little bit of
    English" but was more comfortable speaking in Spanish.  (Exhibit I, R.T. 1/14/10 PM at
28  72-73.)   On cross examination he again admitted to speaking "a little English" and
    admitted that he had conversed with the police in English.  (*Id.* at 84.)

**Reliability of In-Court ID Despite Suggestiveness of Display**- More importantly, Petitioner fails to show any error in the conclusion that the identification was reliable despite the pretrial photo display and alleged comments.

In resolving the matter, the Arizona Court of Appeals cited without criticism the trial court's determination that the display of the pictures to the victim was "unduly suggestive." (Exhibit BB, Mem. Dec. at 1.)   Thus, the court went on to determine whether the in-court identification was nonetheless reliable.  Petitioner suggests nothing about the prosecutor having purportedly identified the photos as being the perpetrators that would have altered the suggestiveness of the display in such a way that the analysis would have been different on the remaining reliability of the in-court identification.

As noted by the state court, and discussed hereinabove, the pre-indictment identification was sufficiently reliable in light of the *Biggers* factors to avoid due process concerns.  Much of the same analysis would carry over to the in-court identification, including the victim's opportunity to view the perpetrators at the time of the crime, his degree of attention, and the level of certainty.

Petitioner points to no factor which the state court failed to consider which would have called for a different conclusion on reliability. Nor does Petitioner proffer any reason why the state court's ultimate weighing of the reliability question was erroneous. The undersigned discerns none.

Accordingly, Petitioner has failed to show that the admission of the in-court identification amounted to a denial of due process, and Ground 2(b) is without merit.


**E.  GROUND 3: SEARCH AND SEIZURE**

In his Ground 3, Petitioner asserts that the search of his vehicle was not supported by probable cause because: (1) when officers arrived the vehicle was parked and Petitioner was already outside the vehicle (presumably to establish the search was not incident to his arrest); (2) his vehicle did not fit the description of the involved vehicle, and the license plates did not match (presumably to show that lack of probable cause);

and (3) no permission to search was given.  (Petition, Doc. 1 at 8.)

Respondents argue the claim is without merit because: (1) the claim was waived by failure to move to suppress the evidence at trial; (2) in the face of a full and fair opportunity to litigate a Fourth Amendment claim at trial, *Stone v. Powell*, 482 U.S. 465 (1976) precludes such a claim on habeas; (3) officers had reasonable cause to believe the vehicle contained evidence of the crime for which Petitioner was arrested despite the discrepancy on the license plate (in part because of evidence the license plate had recently been switched); and (4) discovery of the evidence would inevitably have occurred upon a search of the vehicle upon impound.  (Supp. Answer, Doc. 21 at 8-10.)

Petitioner does not reply.

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court established the limits of the "exclusionary rule" in relation to federal habeas proceedings.  "We conclude that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id.* at 494.   The Court noted that the exclusionary rule was merely "a judicially created means of effectuating the rights secured by the Fourth Amendment." *Id*. at 482.  Accordingly, they adopted this limitation on its application in federal habeas corpus actions after "weighing the utility of the exclusionary rule against the costs of extending it to collateral review of Fourth Amendment claims."  *Id*. at 489.

The *Stone* rule only applies, however, where there was an "opportunity for full and fair consideration of [the defendant's] reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and on direct review."  *Id.* "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996).

Here, Petitioner proffers nothing to suggest that he did not have an opportunity for consideration of the instant claims.  There appears no reason why Petitioner could not

have brought this claim at trial or on direct appeal.

To be sure, Petitioner has asserted ineffective assistance of trial and appellate counsel.  However, such ineffectiveness is attributed to Petitioner for purposes of the *Stone* analysis, and does not render the opportunity to litigate unavailable, just unused. LaFave, *et al.*, *The Opportunity for Full and Fair* Litigation, 7 Crim. Proc. § 28.3(d) (3d ed.)

It might be argued that because the PCR court declined to reach this claim on the ambiguous basis that it "was or could have been" raised on direct appeal, Petitioner was denied the opportunity to fully and fairly litigate this claim.  That argument would fail. Despite the requirement that this Court treat that ambivalent ruling as establishing exhaustion of Petitioner's state remedies, the underlying reality is that Petitioner had the opportunity to but did not raise this claim on direct appeal, and it could have been properly deemed waived when he attempted to bring it in his PCR proceeding. "[T]he *Stone* "opportunity for full and fair consideration" requirement is satisfied where the state court is squarely faced with Petitioner's Fourth Amendment claim, but chooses to resolve that claim on an independent, adequate, non-federal state ground."  *O'Berry v. Wainwright*, 546 F.2d 1204, 1216 (5th Cir. 1977).  Thus, despite the PCR court's ambivalent ruling, Petitioner had opportunities to assert his Fourth Amendment claim at trial and on direct appeal.

Accordingly, Ground 3 is barred from consideration by *Stone*.

Even if this Court could consider the merits of this claim, Petitioner has failed to counter Respondents' contention that the claim is without merit because the evidence would have inevitably been discovered in the search incident to the impoundment of the vehicle.  "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means…then the deterrence rationale [for the exclusionary rule] has so little basis that the evidence should be received."  *Nix v. Williams*, 467 U.S. 431, 444 (1984).  Impound inventories, *i.e.* "reasonable police regulations relating to inventory procedures administered in good

faith" are a lawful means of discovering evidence and "satisfy the Fourth Amendment." *Colorado v. Bertine*, 479 U.S. 367, 374 (1987).   *See State v. Rojers*, 216 Ariz. 555, 169 P.3d 651 (App. 2007) (applying inevitable discovery doctrine to evidence discovered in illegal search of vehicle that would have been discovered upon impoundment).

## F.  GROUND 4(a): INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground 4(a), Petitioner argues trial counsel was ineffective for failing to "conduct a pretrial investigation in discrepancies of case."  (Petition, Doc. 1 at 9.)

Respondents argue that this claim is conclusory, and thus without merit. (Answer, Doc, 13 at 38-39.)

Petitioner does not elaborate on this claim in his Reply (Doc. 16) or his Supplemental Reply (Doc. 22).

A failure to investigate a meritorious defense may constitute ineffective assistance of counsel.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  However, a habeas petitioner may not leave a court to speculate what evidence the deficient investigation would have discovered.  In order to prevail on an allegation that defense counsel conducted an insufficient investigation resulting in ineffective assistance, the petitioner must show specifically what that investigation would have produced.  A petitioner may not simply speculate about what a witness' testimony, but must adduce evidence to show what it would have been.  *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997).

Petitioner fails to identify the discrepancies to which he refers, what any additional investigation would have disclosed, or how such additional information would have resulted in a different outcome at trial.

In his PCR Petition, Petitioner referenced counsel's failure to investigate whether the license plate reported to have been on the vehicle used by the perpetrators (which was different from that on Petitioner's vehicle when he was arrested) was assigned to some vehicle other than a vehicle matching the description of the vehicle and/or Petitioner's vehicle, and whether and by whom the plate was submitted for a refund on

the tag at a later date.  (Exhibit FF, PCR Pet., Attachment A at 2.)   However, Petitioner did not proffer anything to show what that investigation would have revealed.

Accordingly, Ground 4(a) is without merit.

## G.  GROUND 5: FALSE TESTIMONY

In his Ground 5, Petitioner argues that his indictment was secured by the use of false and misleading testimony from officers regarding Petitioner's admission of committing the crime.  (Petition, Doc. 1 at physical page 10.)

Respondents argue that there is no federal constitutional right to a grand jury indictment and thus this claim is not cognizable on habeas review, the claim is unsupported by the record, and any error was rendered harmless by his ultimate conviction.

Petitioner does not reply.

Defense counsel filed a motion to dismiss on this basis prior to trial.  (Exhibit U, Mot. Dismiss.)  The motion was denied.[9]

The Fourteenth Amendment does not impose the requirement of indictment by grand jury upon the states.  *Hurtado v. California*, 110 U.S. 516, 538 (1884), recently reaffirmed in *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 & 500 (2000).  Thus, any defect or misconduct in the grand jury proceeding would not result in a federal constitutional violation.

To the extent that state law may have provide a petitioner with such a right, the violation of that right is generally not a claim cognizable in a federal habeas proceeding. A state prisoner is entitled to habeas relief under 28 U.S.C. § 2254 only if he is held in custody in violation of the Constitution, laws or treaties of the United States.  Federal habeas relief is not available for alleged errors in the interpretation or application of state

---

[9] Arizona authorizes "special action" petitions to challenge grand jury proceedings prior to the completion of trial.  *See e.g. Crimmins v. Superior Court, In & For Maricopa Cnty.*, 137 Ariz. 39, 668 P.2d 882 (1983).  Nothing in the record suggest that Petitioner pursued such an action.

law.  *Estelle v. McGuire*, 502 U.S. 62 (1991).

Moreover, even in the context of a federal prosecution where there is a constitutional right to a grand jury indictment, the ultimate conviction of the crime renders any defect in the grand jury proceeding harmless.  *U.S. v. Mechanik*, 475 U.S. 66, 70 (1986); *Williams v. Stewart*, 441 F.3d 1030, 1042 (9th Cir. 2006).  Except in a case involving "structural error," habeas relief is not available for harmless errors. *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) Presentation of perjured testimony to the grand jury is not structural error.  *United States v. Sitton*, 968 F.2d 947, 954 (9th Cir.1992), *abrogated on other grounds by Koon v. United States*, 518 U.S. 81, 96–100 (1996).

It is true that where a constitutional violation has been found based upon the presentation of perjured testimony to the ***trial*** jury, no further showing of harmfulness need be shown because finding such a violation requires a determination that the testimony was "material," which in turn requires its own showing of an effect on the trial jury's decision to convict.  *See Hayes v. Brown*, 399 F.3d 972, 984-985 (9th Cir. 2005).  But here, Petitioner's claim is not that the perjured testimony was presented to the trial jury, but to the grand jury.  Thus, the perjured testimony of which Petitioner complains would not have had any effect on the trial jury, would not qualify as "material," and a separate showing of harm would apply.

Accordingly, Ground 5 is without merit.


## H.  GROUND 6: UNDULY PREJUDICIAL EVIDENCE

In his Ground 6, Petitioner argues that he was denied due process when "unduly prejudicial evidence was admitted in violation of Rule of Evidence 403 [when the] victim denie[d] making impeachment statement to officer…different from police officers during cross examination."  (Petition, Doc. 1 at physical page 11.)

Respondents argue that this claim is conclusory, noting that Petitioner fails to identify the purported evidence, and any purported violation of the Arizona rules of

1   evidence would not be a cognizable claim on habeas review.

2          Petitioner does not reply.

3          To the extent that Petitioner simply relies upon a purported violation of Arizona

4   Rule of Evidence 403, his claim is without merit.  "[F]ailure to comply with the state's

5   rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief."

6   *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).

7          Nonetheless, evidence which "so fatally infected the proceedings as to render

8   them fundamentally unfair" does result in a cognizable denial of due process. *Id.*

9   However, Petitioner's conclusory allegations fail to support such a claim.  This Court is

10  left to guess which victim Petitioner references, and which statement he contends was

11  "different."[10]  Moreover, Petitioner proffers nothing to suggest that any violation was not

12  harmless in light of the other evidence available.  "Conclusory allegations which are not

13  supported by a statement of specific facts do not warrant habeas relief."  *James v. Borg*,

14  24 F.3d 20, 26 (9th Cir. 1994) (petitioner failed to identify specific evidence disputed).

15         Finally, Petitioner fails to suggest how a mere inconsistency among witnesses or

16  even between a witness and his prior statements would render evidence unduly

17  prejudicial.  Such conflicting statements are the stuff of which virtually every trial is

18  made.  "By design, all evidence is meant to be prejudicial; it is only unfair prejudice

19  which must be avoided."  *United States v. Rodriguez-Estrada*, 877 F.2d 153, 156 (1st

20  Cir. 1989).  *Cf. State v. Allred,* 134 Ariz. 274, 277, 655 P.2d 1326, 1329 (1982)

21  (discussing factors relevant to determination that use of prior inconsistent statement used

22  for substantive purposes is unduly prejudicial).

23         Accordingly, Ground 6 is without merit and must be denied.

24

25

---

26  [10] Petitioner raised a similar claim in his PCR Petition which was arguably equally
    conclusory. (*See* Exhibit FF, PCR Pet., Exhibit 1 at 1, ¶ III 2.)  In his PCR Reply and
27  Petition for Review, he referenced testimony by victim DF about his ability to identify
    the driver of the vehicle which purportedly contradicted DF's statements to police.  (*See*
28  Exhibit HH, PCR Reply at and Exhibits 5-10; Exhibit LL, Pet. Rev. at 3.)  Even then,
    Petitioner failed to suggest the nature of the undue prejudice.

**I.  GROUND 7: DOUBLE JEOPARDY**

In his Ground 7, Petitioner argues that his double jeopardy rights were violated when he was conviction of armed robbery and aggravated assault based on the same conduct with a weapon.  (Petition, Doc. 1 at physical page 12.)

Respondents argue that the two offenses required different elements. (Supp. Answer, Doc. 21 at 14-15.)

Petitioner does not reply.

The claim is without merit.

> In both the multiple punishment and multiple prosecution contexts, this Court has concluded that where the two offenses for which the defendant is punished or tried cannot survive the "same-elements" test, the double jeopardy bar applies. The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

The Arizona Court of Appeals has described the elements of the two offenses as follows:

> A person commits aggravated assault by using a deadly weapon or dangerous instrument while:
> 1. Intentionally, knowingly or recklessly causing any physical injury to another person; or
> 2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or
> 3. Knowingly touching another person with the intent to injure, insult or provoke such person.
> A.R.S. § 13–1203(A); *see also* A.R.S. § 13–1204(A)(2). A person commits armed robbery by, while armed with or threatening with a deadly weapon, dangerous instrument, or simulated deadly weapon, threatening or using force against another person "with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property." A.R.S. § 13–1902(A); see also A.R.S. § 13–1904(A).

*State v. Price*, 218 Ariz. 311, 313, 183 P.3d 1279, 1281 (App. 2008).

Petitioner points to the commonality of the use of a weapon in the commission of each offense.  Indeed, both require a weapon.  However, there is no requirement that every element be unique to only one offense, only that there be "at least one unique

element." *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004).

Under the Arizona statutes, the armed robbery offense does not require a physical injury, apprehension of injury, or touching. One of those three is required for an aggravated assault. Conversely, armed robbery requires taking/retention of (or at least the intent to take/retain) property. Aggravated assault need have no connection to such actions or motives. *See Price*, *supra*. Thus, each offense requires proof of an additional fact that the other does not, and for Double Jeopardy purposes, they are not the same offense and multiple punishments from the same course of conduct are permitted.

Therefore, Ground 7 must be denied.

## J. GROUND 8: CONFRONTATION CLAUSE

In his Ground 8, Petitioner argues that his rights under the "Confrontation Clause" were denied when a victim failed to appear in court and testify. Petitioner relies upon *Crawford v. Washington*, 541 U.S. 36 (2004). (Petition, Doc. 1 at physical page 13.)

Respondents argue that the claim fails to identify the witness and thus is vague, and that if construed as referring to the victim M.M., the claim is without merit because the prosecution's failure to call a witness does not violate the Confrontation Clause. (Supp. Answer, Doc. 21 at 16-17.)

Petitioner does not reply.

The claim as framed in the Petition is conclusory and thus without merit.

It is true that in his PCR proceedings, Petitioner argued that his confrontation rights were violated when the victim M.M. "did not show at trial for cross-examination." (Exhibit HH, PCR Reply at 4.) Petitioner made no allegation that the defense called M.M. to testify. Assuming Petitioner intended to assert the same claim in this proceeding, the claim is without merit.

In *Melendez-Diaz v. Massachusetts*, the Supreme Court discussed the interplay between the Confrontation Clause and the Compulsory Process Clause:

The Sixth Amendment guarantees a defendant the right "to be

38

confronted with the witnesses *against him*." (Emphasis added.)
…While the Confrontation Clause guarantees a defendant the right to be confronted with the witnesses "against him," the Compulsory Process Clause guarantees a defendant the right to call witnesses "in his favor." U.S. Const., Amdt. 6. The text of the Amendment contemplates two classes of witnesses—those against the defendant and those in his favor. The prosecution *must* produce the former; the defendant may call the latter.

*Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 313-14 (2009).  Here, (except in relation to the hearsay discussed hereinafter) Petitioner makes no allegation that the victim M.M. was a *witness* against him, although he was a victim under counts of the indictment for which Petitioner was convicted.

To the extent that M.M. was simply a victim, the prosecution was not obligated to call him. "The confrontation clause does not come into play where a potential witness neither testifies nor provides evidence at trial."  *United States v. Porter*, 764 F.2d 1, 9 (1st Cir. 1985) (summarizing cases from other circuits).  *See Cooper v. California*, 386 U.S. 58, 62 n. 2 (1967) (finding the petitioner's contention that he was deprived of his right to confront a witness because the "State did not produce the informant to testify against him" to be "absolutely devoid of merit").

If, perhaps, Petitioner could show that he requested and was denied a subpoena for M.M. to testify "in his favor," then he might have a Compulsory Process Claim, but that is not the claim Petitioner makes in Ground 8.

Of course, the Confrontation Clause would generally prohibit the prosecution from offering hearsay evidence about out of court statements from M.M..   Respondents contend that "the prosecution did not seek to offer any out–of–court testimonial evidence from M.M." (Supp. Resp. Doc. 21 at 16.)   To be sure, the prosecution did elicit testimony about statements made by M.M. from both the victim J.L. and Officer Campos

**Hearsay from J.L.** - On direct examination by the prosecutor, the victim J.R. testified:

> Q. Now, you recall [M.M.] and his cousin being there, correct?
> A. Uh-huh. Yes.
> Q. Do you recall -- do you recall them having to give up items to these individuals?

39

A. Well, I didn't see because, I mean, this guy had the gun on me, and then the other guy had a gun on him, so I couldn't see because I was -- I was scared.

Q. So you don't recall him taking anything from those individuals?

A. He just told me that he had taken some jewelry and bracelet from him.

(Exhibit G, R.T. 1/12/10 PM at 51-52.) However, defense counsel objected to the testimony as hearsay and the Court sustained the objection and directed the jurors to "disregard that particular statement." (*Id.* at 52.) "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

Shortly thereafter, still on direct, M.R. testified as follows:

Q. Right after this happened, is that when – while you're still shaken up from this incident, is that when Martin Macias told you what had been stolen from him?

A. Like $80.00.

Q. I'm sorry. Just my question is, when? Was it immediately right -- I mean, immediately after this happened that he told you what had been stolen from him?

A. Oh, yes.

\*\*\*

Q. Again, I'm sorry. I don't mean to be confusing. The time that Martin Macias told you what had been stolen from him, at that moment, was he still shocked that he had been robbed?

A. Yes.

Q. What was it that he told you that had been robbed from him in that moment when he's still shocked?

A. Well, just -- he just said, well, I was robbed, I was robbed, and then later on when he started to calm down, that's when he told me like how much he had been robbed and what they had taken.

Q. Were you still under the stress of this moment?

A. Yes.

Q. And what was it that he said that they robbed?

A. Martin?

Q. Yes.

A. Um, just like money because he didn't have jewelry. He didn't have anything.

(*Id.* at 53-54.) This time defense counsel did not object.

Obtaining relief based on a Confrontation Clause claim requires a showing of prejudice. "A Confrontation Clause violation is harmless, and so does not justify habeas relief, unless it ' 'had substantial and injurious effect or influence in determining the jury's verdict.' ' " *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011). "In general, the inquiry into whether the constitutionally erroneous introduction of a piece of

evidence had a substantial and injurious effect is guided by several factors: "the importance of the testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, the extent of cross-examination permitted, and the overall strength of the prosecution's case." *Ocampo v. Vail*, 649 F.3d 1098, 1114 (9th Cir. 2011).

Here, the testimony about M.M's statements concerning what was stolen from him were not prejudicial.  The defenses' theory of the case turned not upon whether a robbery had occurred, nor whether M.M. had been robbed, nor what specifically had been taken, but upon whether Petitioner was the perpetrator.   In challenging J.L.'s in-court identification, defense counsel had argued to the Court "the whole case revolves around whether or not these people properly identified my client."  (Exhibit H, R.T. 1/14/10 at 5.)

Moreover, in Arizona neither armed robbery nor aggravated assault require proof of what was taken. As discussed in connection with Ground 7 (double jeopardy) hereinabove, aggravated assault requires no proof of a taking.  In armed robbery, it is the taking of "any property of another" which must be shown.  Ariz. Rev. Stat. § 13-1902(A).  Thus it was irrelevant whether Petitioner took $80, a watch, or a toothpick from the victim. *Cf.* Ariz. Rev. Stat. § 13-1802(G) (setting different offenses for theft, dependent upon the value of the property stolen).

Accordingly, Petitioner would be unable to show any prejudice from the admission of testimony on these limited out of court statements by M.M.

**Hearsay from Campos** - On direct examination, Officer Campos testified that he "assisted M.M," as well as the victims J.L. and C.P., in translating at the one-on-one identifications. (Exhibit K, R.T. 1/19/10 PM at 48.)  Defense counsel objected on the basis of hearsay, but the Court made no explicit ruling, referring instead to discussions concerning the identification of missing victims, and concluding that the reference to the unidentified victim, C.P. was better left unaddressed rather than calling the jury's attention to it.  (*Id.* at 48-50.)  Subsequently, defense counsel cross-examined Officer

Campos on M.M's identification of the suspects and confirmed that M.M. did not identify Petitioner as a participant.  (*Id.* at 59-60.)[11]

Hear, there arguably was no out-of-court statement offered.  Campos simply testified that M.M. was present at the identifications, and that Campos translated for M.M.  At most, this implies that M.M. spoke, but did not present the content of his statements.  As such, Campos' testimony could not have been offered to prove the truth of whatever M.M. had said.  "[T]he Confrontation Clause applies only to out-of-court statements that are "use[d]" to "establis[h] the truth of the matter asserted."  *Williams v. Illinois*, 132 S. Ct. 2221, 2240, 183 L. Ed. 2d 89 (2012) (quoting *Crawford v. Washington*, 541 U.S. 36, 59–60, n. 9 (2004).

Even if some statement by M.M. were implied from Campos' testimony (*i.e.* tht he had identified the perpetrators), there was no prejudice because Officer' Campos' unchallenged testimony on cross-examination was that M.M. had not identified Petitioner as a perpetrator, making any such implicit statement beneficial to Petitioner rather than harmful.

Based upon the foregoing, even if Petitioner's Ground 8 were deemed to relate to hearsay from M.M., the claim would be without merit.

Accordingly, Ground 8 must be denied.


**C.  SUMMARY**

Based upon the foregoing, the undersigned has concluded that Petitioner's state remedies on Grounds 2(a) (prosecutorial misconduct re in-court identification) and Ground 4(b) (ineffective assistance of appellate counsel) were procedurally defaulted, and these claims must be dismissed with prejudice.

Further, all of Petitioner's other claims are without merit and thus the Petition must be denied.

---

[11] The hearsay introduced by defense counsel would not be subject to a Confrontation Clause claim because it was not used *against* Petitioner.

42

### IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds and in part on the merits. Under the reasoning set forth herein, with regard to the grounds disposed of on procedural grounds, jurists of reason would not find it debatable whether the procedural rulings are correct.  With regard to the grounds disposed of on the merits,

1  reasonable jurists would not find the conclusions debatable or wrong.

2  Accordingly, to the extent that the Court adopts this Report & Recommendation

3  as to the Petition, a certificate of appealability should be denied.

4

5  ## V.  RECOMMENDATION

6  **IT IS THEREFORE RECOMMENDED** that Grounds 2(a) (prosecutorial

7  misconduct re in-court identification) and Ground 4(b) (ineffective assistance of

8  appellate counsel) of Petitioner's Petition for Writ of Habeas Corpus, filed November 7,

9  2013 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

10  **IT IS FURTHER RECOMMENDED** that the remainder of Petitioner's Petition

11  for Writ of Habeas Corpus, filed November 7, 2013 (Doc. 1) be **DENIED**.

12  **IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings

13  and recommendations are adopted in the District Court's order, a Certificate of

14  Appealability be **DENIED**.

15

16  ## VI. EFFECT OF RECOMMENDATION

17  This recommendation is not an order that is immediately appealable to the Ninth

18  Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules*

19  *of Appellate Procedure*, should not be filed until entry of the district court's judgment.

20  However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties

21  shall have fourteen (14) days from the date of service of a copy of this recommendation

22  within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules

23  Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days

24  within which to file a response to the objections.  Failure to timely file objections to any

25  findings or recommendations of the Magistrate Judge will be considered a waiver of a

26  party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*,

27  328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's

28  right to appellate review of the findings of fact in an order or judgment entered pursuant

to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: December 5, 2014

13-2286r RR 14 08 05 on HC.docx

James F. Metcalf
United States Magistrate Judge